JULIUS WEATHERSBY v. STATE OF MISSISSIPPI.

[48 South. 724.]

CRIMINAL LAW AND PROCEDURE. *Murder. New trial. Newly discovered evidence.*

In a murder case, after a conviction subjecting defendant to the death penalty, a properly supported motion for a new trial because of newly discovered evidence should be sustained, where the new evidence will seriously controvert and weaken the state's testimony on which the conviction was obtained.

FROM the circuit court of Lincoln county.

HON. MOYSE H. WILKINSON, Judge.

Weathersby, appellant, was indicted and tried for the murder of one Emanuel Miller, was convicted, the jury failing to fix his punishment at imprisonment for life in the penitentiary, thereby subjecting him under the statute, Code 1906, § 1229, to the death penalty.

The defendant's motion for a new trial because of newly discovered evidence was overruled by the trial court. The homicide occurred May 22, 1908; the indictment was found May 23, 1908, and defendant was put to trial and convicted June 3, 1908. In view of the opinion of the court a further statement of the facts is deemed unnecessary.

*A. C. & J. W. McNair,* for appellant.

The court below erred in not granting the defendant a new trial because of newly discovered evidence. A statement of the facts, we think, demonstrates this to be true. The May term, 1908, of the circuit court commenced on the third Monday of the month, May 18th. The homicide occurred on Friday, May 22nd, during the term of the court. The indictment was presented by the grand jury on the 23rd, and the defendant was arrested and incarcerated in the county jail on the same day, and on June 3rd the defendant was tried and convicted. The

defendant is a negro boy about nineteen years old, unfamiliar with the courts and the requirements of the law in such cases. He was confined in the jail from the time of his arrest to the day of his trial. He did not succeed in employing counsel to defend him until some two or three days after he was placed in jail. The affidavits of defendant and counsel show that he used and exercised all diligence in seeking to learn the true facts environing the homicide, and of witnesses who saw, or knew, or might have seen or known of the facts of the homicide. It is shown by the affidavits of defendant and counsel, that E. B. French, a white man, while a resident of Brookhaven, was a stranger to defendant and counsel. That they did not know until the progress of the trial that there was such a man in existence as French. And that they did not know, and could not know, what facts were within French's knowledge, and that prior to the trial they had no reason to believe that there was an eye-witness to the homicide other than the witnesses subpoenaed for the state and the defendant. That they were informed, for the first time, of the fact to which French would testify during the trial, when the state had nearly completed the examination of its witnesses; that counsel immediately had a subpoena issued for French and imparted to the trial judge their information. French was at the time in Natchez but was expected by his employers to return on an incoming train, and the court below delayed the trial of the case for some hours to await the train. French did not come on the train, and not for a day or two after the termination of the trial.

French states, in his affidavit, filed as exhibit to the motion for a new trial, that he was at the time of the killing about thirty yards from defendant and the decedent, had an unobstructed view, and that he saw the first shot fired by defendant. That the deceased and the defendant were standing in the ditch along the edge of the sidewalk, about three or four feet from each other, facing each other, and that defendant did not get behind deceased and shoot him from the back or rear.

This accords with the testimony of the defendant, and his

stepfather, Sam Weathersby. This testimony, taken in connection with that of Sheriff Greer, that some of Miller's front teeth were knocked out, that blood ran out of his mouth, and that it was probable, from these physical marks, that Miller was shot from the front; the character of the wound made in the back of the neck, that the ball ranged on a level, that some of the balls entered the right side demonstrates that the testimony of the state's witnesses as to the actual facts of the killing are false and that the testimony of the defendant is true, and that grave injustice has been done to the defendant by his conviction.

French's testimony goes far beyond the mere impeachment of the credibility of witnesses. It shows forth the very truth and demonstrates the actual facts of the homicide. We have conformed to the requirements of the law in such cases. We have shown due diligence; we have shown that the new evidence came to our knowledge at a time when it could not be reached in the trial, and we think it demonstrates that it will probably produce a different result on another trial. We invited the attention of the court to the following cases: *Buckner v. State,* 81 Miss. 140, 32 South. 920; *White v. State,* 45 South. 611; *Turner v. State,* 46 South. 165; *Thompson v. State,* 94 Miss. 901.

*George Butler,* assistant attorney-general, for appellee.

The testimony of French is a simple contradiction of the witnesses for the state, all of the many witnesses for the state, and corroborative of the testimony of Sam Weathersby.

Under well-settled rules of law in this state as to when and under what circumstances a new trial will be awarded for newly discovered evidence (departed from only in some few extreme and exceptional cases, when the verdict is of doubtful propriety) this verdict must stand.

This testimony certainly could have been discovered before trial with ordinary diligence. It was not concealed by the witness. It was cumulative and it is not probable that had it been heard it would have produced a different result.

WHITFIELD, C. J., delivered the opinion of the court.

If the testimony delivered in chief for the state be looked at alone, undoubtedly the verdict is correct; but, if the facts are as stated in the testimony of French on motion for a new trial on the ground of newly discovered evidence, then certainly a material part of the evidence for the state in chief will be seriously shaken. The affidavits of the counsel and of the defendant himself complied fully with the rules in respect to applications for new trials on the ground of newly dscovered evidence.

Looking to the whole case, we feel safer, on the issues of life and death, in reversing the case because of the refusal to grant a new trial on this ground; and for that reason the judgment is *reversed,* and the cause *remanded.*